## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA FAUX O/B/O J.F., | : | CIVIL NO.: 1:20-cv-00842-SES |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Amanda Faux ("Faux") seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act on behalf of J.F., her minor son.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  After reviewing the parties' briefs, the Commissioner's decision, and the relevant portions of the certified administrative transcript, we cannot conclude that the Commissioner's decision is supported by substantial evidence.  Accordingly, we will vacate the Commissioner's decision and remand the case for further proceedings.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 11-1 to 11-21*.[2]  On August 30, 2013, Faux protectively applied[3] for supplemental security income benefits on behalf of her minor son J.F., alleging that J.F. has been disabled since September 1, 2012. *Admin. Tr.* at 11; *Doc. 1* at 5.  After the Commissioner denied the claim at the initial level of administrative review, Faux requested an administrative hearing, which was held before Administrative Law Judge Therese Hardiman (the "ALJ") on September 16, 2015. *Admin. Tr.* at 47.

---

[2] The facts of the case are well known to the parties and will not be repeated here.  Instead, we will recite only those facts that bear on Faux's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

On February 16, 2016, the ALJ determined that J.F. has not been disabled since August 30, 2013, the protective filing date, and so she denied J.F. benefits. *Id*. at 24. After the Appeals Council denied her request for review, *id.* at 1, Faux filed a complaint in this Court, and this Court vacated the Commissioner's 2016 decision and remanded Faux's case on May 16, 2018. *Faux, o/b/o, J.F. v. Berryhill*, No. 3:17-CV-1377, 2018 WL 2230409, at *1 (M.D. Pa. May 16, 2018). In so doing, Judge Conner adopted in full the report and recommendation of Magistrate Judge Carlson. *Id*.

Judge Carlson aptly set forth the background regarding J.R. and his claims up to that time:

> J.F.'s disability application was based upon a cascading array of developmental disorders which he faced. These impairments included: As[p]erger's disorder, developmental delay disorder, attention deficit hyperactivity disorder and a speech and language disorder. The administrative record reveals that these disorders, singly and in combination, constituted severe impairments for J.F.

> J.F. has faced these challenges from birth. He was reportedly born one month premature and required CPR resuscitation at birth. From a very early age, J.F. displayed significant developmental delays. He did not speak until he was 3 ½ years old, and did not speak in sentences until he was age 4. J.F.'s mother has been tireless in her efforts to secure assistance for her child, enrolling him in public schools in 2012 before transferring him to a private school in the 2013-14 academic years, and then trying to reintegrate him into the public school system in 2015. In the course of these efforts, J.F. has been the subject of multiple evaluations which have consistently identified significant developmental deficits for this child. For

example, an evaluation of J.F. conducted in 2012 when he was 6 years old found that he received below average grades in all classes except math; he struggled with letter recognition, and could not put sound to some letters; he was unable to read and could only master 15 of 50 site words.  J.F. also exhibited violent and self-abusive behavior; a low frustration tolerance; and sensory defensiveness.

As a result of this testing J.F. was assessed a Global assessment of function, or GAF, score of 50. . . .

Likewise, testing conducted at the Misericordia University Speech, Language and Hearing Center in September of 2012 found that J.F.'s performance in many testing areas fell between 1 and 2 standard deviations below the mean scores for his age cohort.  Consequently, in December of 2012, the Dallas School District concluded that "[d]espite numerous interventions and modifications, [J.F.] is continuing to exhibit a high degree of need."

Due to his impairments J.F. was enrolled by his mother in the 2013-4 school year at the Allied Services DePaul School, a private educational institution that specialized in assisting children with developmental challenges.  Even in this specialized educational environment, there is significant evidence that J.F. continued to struggle in some spheres of learning.  In fact, a teacher questionnaire completed by the DePaul School indicated that J.F. experienced serious and substantial problems in at least developmental domains: (1) acquiring and using information; (2) attending and completing tasks; and (3) caring for himself.

J.F. returned to the public school system in 2015, when his mother was no longer able to afford private education at the DePaul School.  Individualized Education Program ("IEP") assessments conducted of J.F. in 2015, by Western Wayne School District found that J.F., a fourth grade student, performed well below his grade level in many academic disciplines.  In a number of areas related to acquiring and using information J.F.'s test scores were significantly below his

cohort's mean performance.  For example, J.F.'s ability to categorize information fell 2.93 standard deviations below the mean and his ability to discern similarities was 2.27 standard deviations below the mean.  J.F.'s total speech and language assessment score in 2015 fell 1.87 standard deviations below the mean.  Further, the academic professionals who evaluated J.F. in 2015 found that he demonstrated significantly delayed reading, math and written expression skills when compared to age and grade level expectations.

The findings of these educational and mental health professionals were echoed by the testimony of J.F.'s mother and grandmother at the hearing conducted by the ALJ in this case on September 16, 2015.  At this hearing, J.F.'s mother and grandmother described him as socially isolated, occasionally subject to fits of physical self-abuse, anxious, unable to complete tasks or maintain concentration, impaired in his speech, and emotionally fragile.  They also explained that J.F., who testified at the ALJ hearing that he possessed 500 friends although he did not know their names yet, was given to episodes of exaggeration and confabulation.

*Faux o/b/o J.F. v. Berryhill*, No. 3:17-CV-1377, 2018 WL 2250917, at *1–2 (M.D.

Pa. Apr. 20, 2018) (case law citations and citations to the record omitted).

Judge Carlson found that "the cursory treatment that the ALJ has given to

the assessment of the degree of J.F.'s impairment in numerous domains of activity

is simply insufficient to permit a reasoned analysis of this opinion and compels a

remand of this case for further consideration by the Commissioner." *Id*. at *6.  In

this regard, Judge Carlson observed that the ALJ made "no reference to the

multiple clinical findings and assessments made by independent academic and

mental health professionals over the [s]pan of three years, all of which consistently

found that J.F. experienced developmental deficits far beyond his peer group." *Id*.
Noting that the ALJ failed to address "[t]hese findings[,] which were echoed in IEP
assessments, mental health evaluations and the assessment conducted by
Misericordia University" in connection with several domains of functioning, Judge
Carlson concluded that the court "cannot determine whether the ALJ considered,
discounted, or failed to recognize the relevance of this substantial body of clinical
evidence in reaching her decision denying J.F.'s application for disability
benefits." *Id*.

Judge Carlson also specifically addressed the ALJ's flaws in connection
with her analysis of J.F.'s ability to acquire and use information. *Id*. at *7.  In that
regard, he observed that "there is an irreconcilable, internal inconsistency between
the ALJ's conclusion" that J.F. had a less than marked limitation in this domain
"and the evidence cited by the ALJ to support that conclusion." *Id*.  And he
concluded:

> Simply put, we cannot discern from this recital how the ALJ
> concluded that J.F. suffered from a less than marked limitation
> in this domain, since the only fragmentary evidence cited by the
> ALJ consisted of contradictory proof: a school's finding that he
> encountered serious problems with organizing things, and his
> mother's report that J.F. was unable to complete tasks.

*Id*.

Judge Carlson also specifically addressed why the ALJ's conclusion that J.F. had a less than marked limitation in interacting with others was not supported by the evidence:

> On this score, the ALJ found that: "The claimant's mother reported that he had friends while enrolled in the DePaul School (a private school) but does not have any friends in public school. However, the record also indicates that the claimant participated in soccer, guitar lessons and dance lessons." Yet, a fair reading of the testimony of J.F.'s mother and grandmother simply does not sustain the conclusion that J.F. experienced less than marked impairments in interacting with others. Quite the contrary, these witnesses described J.F. as socially isolated, estranged from his peer group, fearful, anxious, and self-abusive. Moreover, both J.F.'s mother and his grandmother described J.F.'s outside activities as failed attempts at socialization, not as the successes suggested in the ALJ's decision. In short, this evidence cited by the ALJ simply does not support the ALJ's conclusion that J.F. was only mildly impaired in this domain. Instead, it contradicts that conclusion.

*Id*. (citation to the record omitted).

Finally, concluding that errors regarding "multiple domains of functioning could be outcome-determinative and change the course of his case," Judge Carlson rejected the Commissioner's argument that any errors by the ALJ were harmless. *Id*. at *8.

As set forth above, Judge Conner adopted Judge Carlson's Report and Recommendation, vacated the Commissioner's decision, and remanded the case "with instructions to conduct a new administrative hearing, develop the record

fully, and evaluate the evidence appropriately in accordance with this order and the report of Magistrate Judge Carlson." *Faux,* 2018 WL 2230409, at *1.

Upon remand, Faux and J.F. appeared and testified at another administrative hearing held before the ALJ on May 1, 2019. *Admin. Tr.* at 582.  On July 3, 2019, the ALJ again determined that J.F. has not been disabled since August 30, 2013, the protective filing date, and so she again denied J.F. benefits. *Id.* at 598.  Faux appealed the ALJ's decision to the Appeals Council, which denied her request for review on April 30, 2020. *Id.* at 572.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

Faux filed her second and now pending complaint in this Court on May 23, 2020. *Doc. 1* at 1.  Faux asks this Court to reverse the ALJ's decision and to order an award of benefits or remand this case to the Commissioner. *Doc. 15* at 16–17. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 10, 11.* The parties then filed briefs, *see docs. 15, 18, 19*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

9

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether J.F. is disabled, but whether substantial evidence supports the Commissioner's finding that J.F. is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive supplemental security income pursuant to Title XVI of the Social Security Act, a claimant under the age of 18 ("child") must demonstrate that he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. The ALJ follows a three-step sequential-evaluation process to determine whether a child claimant is disabled. *See* 20 C.F.R. § 416.924. Under this process, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has an impairment or combination of impairments that is severe; and (3) if so, whether the child's severe impairment (or

10

combination of impairments) meets, medically equals, or functionally equals one of the disability listings. *Id.*

At step three, an impairment meets or medically equals a listed impairment if the impairment, or combination of impairments, and its symptoms are equal in severity and duration to the criteria of any listed impairment. *Id.* § 416.926(a); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  If a child's impairment, or combination of impairments, does not meet or medically equal a listing, the ALJ will decide whether the impairment results in limitations that are functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a(a).  Whether a child's impairment functionally equals a disability listing is analyzed in terms of six functional domains. *Id.* § 416.926a(b).  "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* § 416.926a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical wellbeing. *Id.*  When determining whether an impairment is functionally equivalent to a listing, the ALJ considers the effects of all the child's impairments, including those impairments that the ALJ does not identify as severe at step two of the analysis. *Id.* § 416.926a(a).

An impairment is functionally equivalent to a disability listing if it results in a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id.* A "marked" limitation is one that seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "'[m]arked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.* An "extreme" limitation is one that very seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An "'[e]xtreme' limitation also means a limitation that is 'more than marked.'" *Id.*

The ALJ uses a "whole child" approach in determining whether an impairment is functionally equivalent to a listing. *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule—the "Whole Child" Approach*, SSR 09-1p, 2009 WL 396031 (Feb. 17, 2009). Under this approach, the ALJ begins "by considering the child's functioning without considering the domains or individual impairments." *Id.* at 1. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities," and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* at 2. An impairment "may have effects in more than one domain" and limitations caused by an impairment must be evaluated "in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)).

12

Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.* "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

Additionally, the ALJ's disability determination must meet certain basic substantive requirements. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On July 3, 2019, the ALJ determined that J.F. was not disabled from August 30, 2013, the date of protective filing, to July 3, 2019. *Admin. Tr.* at 582. The ALJ

found that J.F. "was born on September 29, 2005, and therefore, he was a school-age child on August 30, 2013, the date [the] application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2))." *Id.* at 585.

At step one of the sequential-evaluation process, the ALJ found that J.F. had not engaged in substantial gainful activity between August 30, 2013 (the application date) and July 3, 2019 (the date of the decision). *Id.*

At step two of the sequential-evaluation process, the ALJ found that J.F. had the following severe impairments: autism spectrum disorder, depressive disorder, anxiety disorder, disruptive mood dysregulation, attention deficit hyperactivity disorder, and learning disorder. *Id.* at 585.  In her previous decision, the ALJ had found that J.F. also had the severe impairments of Asperger's disorder, developmental delay disorder, and speech/language disorder. *Id.* at 14.  But the ALJ did not find these same impairments to be severe in her second decision. *Id.* at 585–87.

At step three of the sequential-evaluation process, the ALJ found that J.F. did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 588.  As a further part of step three of the sequential-evaluation process, the ALJ determined that J.F. "does not have an impairment or combination of impairments that functionally equals the severity of the listings (20

14

CFR 416.924(d) and 416.926a)." *Id.*  In this regard, the ALJ determined that J.F. had less than marked limitations in the domains of acquiring and using information, of attending and completing tasks, of interacting and relating with others, and of caring for oneself and no limitations in the domains of moving about and manipulating objects and of health and physical wellbeing. *Id.* at 591–98.

In sum, the ALJ concluded that J.F. was not disabled from August 30, 2013, the date of protective filing, to July 3, 2019. *Id.* at 598.  Thus, she denied the claim for supplemental security income. *Id.*

## V.  Discussion.

Although Faux raises many alleged errors, she does not clearly articulate her claims. *Doc. 15* at 8-15.  We have done our best to fairly construe her claims.  We address three of her contentions: (1) that the ALJ failed to comply with the remand order; (2) that the ALJ improperly dealt with the testimony of J.F.'s mother and grandmother; and (3) that the ALJ improperly relied on the opinion of the state agency psychological consultant, Dr. Grutkowski.

### A.  Failure to Comply with the Remand Order.

Faux contends that the ALJ failed to comply with the remand order.  She contends that instead of adequately explaining the basis of her decision, the ALJ "simply stated that the prior Decision did adequately summarize the documentary

evidence." *Doc. 15* at 8.  And Faux contends that instead of providing a clear and

satisfactory explanation of her determinations regarding the domains, that ALJ

"again summarily and without adequate explanation denied this claim," providing

"no explanation at all." *Id*. at 8–9.  Although Faux's contention that the ALJ

provided no explanation at all regarding her findings regarding the domains is

false, she nevertheless has a point that the ALJ's discussion of the evidence (or

lack of discussion regarding most of the evidence submitted prior to the remand)

leads to an inference that the ALJ failed to understand, or refused to follow, the

remand order.

In fact, given the way that the ALJ structured her decision on remand, we

are left to wonder whether the ALJ mistakenly thought that she was just to provide

an update regarding her decision.  Such an inference arises from the fact that aside

from some passing references, the only evidence that the ALJ specifically

discusses is evidence submitted after remand.  For example, after several

boilerplate paragraphs stating that the ALJ has considered all the relevant

evidence, has evaluated the "whole child," and has considered all the symptoms,

*see Admin. Tr.* at 588–89, in her analysis of whether J.F. has impairments that

functionally equal a listing, the ALJ summarizes J.F.'s testimony at the second

hearing as well as Faux's testimony at the second hearing, without mentioning

J.F.'s testimony at the first hearing, Faux's testimony at the first hearing, or J.F.'s

grandmother's testimony from the first hearing.  Then, after concluding that J.F's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms," but "the statements concerning the intensity, persistence and limiting effect so these symptoms are not entirely consistent with the medical evidence and other evidence" and "are not well supported by the overall objective medical evidence of record," the ALJ adopted and incorporated her summary of the documentary evidence from her prior decision, asserting that her prior decision "adequately summarized the documentary evidence admitted at that point." *Id*. at 589–90.  The ALJ then summarizes the medical evidence submitted after remand. *Id*. at 590–91.  The ALJ made no effort to integrate all the evidence.  Thus, we agree with Faux that the ALJ failed to comply with the remand order.

### B.  The Testimony of J.F.'s Mother and Grandmother.

In her decision after remand, the ALJ failed to specifically discuss and weigh the testimony from J.F.'s mother and grandmother from the first hearing. In her earlier decision, however, the ALJ had concluded that the testimony of J.F.'s mother and grandmother was "given some but not great weight" for two reasons. *Id*. at 18.  First, the ALJ noted that the mother and grandmother are not medical professionals:

> These individuals are not medically trained to make
> exacting observations as to the date, frequency, types and

17

> degrees of medical signs and symptoms, or the frequency or
> intensity of unusual moods or mannerisms.  Therefore,
> significant weight cannot be given to their statements because
> they are not consistent with the preponderance of the opinions
> and observations by the medical doctors in this case.

*Id*.  Second, the ALJ concluded that "they cannot be considered a [sic]

disinterested third party witnesses whose statements would not tend to be colored

by affection for the claimant and a natural tendency to agree with the symptoms

and limitations the claimant alleged." *Id*.

Faux suggests that the ALJ erred in discounting J.F.'s mother's and

grandmother's testimony on the basis that they are not medically trained and that

they are not disinterested.  We agree.  "It is simply untenable to reject lay evidence

on the basis that it was prepared by a layperson." *Morton v. Saul*, No. CV 19-3650,

2020 WL 2847930, at *6 (E.D. Pa. June 2, 2020).  And "[t]he fact that a witnesses

is a family member cannot be, without more, a reason for discounting that person's

testimony." *Richards v. Colvin*, 223 F. Supp.3d 296, 306 (M.D. Pa. 2016); *see also*

*Quinn v. Kizakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *7 (M.D. Pa. Jan. 18,

2022) (concluding that the ALJ improperly discounted a third-party report on the

basis that the reporter was not medically trained and was not a disinterested party);

*McGuire v. Berryhill*, No. 4:18-CV-00367, 2019 WL 2502571, at *12 (M.D. Pa.

Apr. 11, 2019) (concluding in a case where "the ALJ . . . elected to summarily

reject the lay testimony of both [the claimant's] father and her spouse after

18

excluding [the claimant's] spouse as a witness at the disability hearing," that the "ALJ's cursory treatment of these witnesses, which discounted their testimony because they lacked medical expertise and had familial ties to the claimant," did not satisfy the requirement that the ALJ explain what evidence he found not credible and why he found that evidence not credible), *report and recommendation adopted*, 2019 WL 1923365, at *1 (M.D. Pa. Apr. 30, 2019).

Perhaps recognizing the problems with the ALJ's discounting of J.F.'s mother's and grandmother's testimony, the Commissioner notes that the language about the mother and grandmother not being medically trained and being interested witnesses was in the ALJ's prior, vacated decision. *Doc. 18* at 19 n.4.  And, the Commissioner continues, the ALJ did not incorporate that language into her new decision; rather, she only incorporated her prior summary of the documentary evidence. *Id.*  That is technically true.  But if the ALJ did not incorporate her prior discussion of the weight given to the mother and grandmother's testimony, then we have a more fundamental problem.  We are left with no discussion of how, if at all, the ALJ weighed the testimony because in her decision after remand, the ALJ does not discuss the testimony of the mother and grandmother at that first hearing or the weight given that testimony.  And although the ALJ does summarize the mother's testimony from the second hearing, she does not discuss what weight, if any, she gave to that testimony.

"The ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter*, 642 F.2d at 704 (3d Cir. 1981) (footnote omitted).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson*, 529 F.3d at 204.  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).  A "reviewing court may remand a case to the [Commissioner] for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

The Third Circuit has determined that an ALJ's failure to address the testimony of third-party witnesses constitutes error that warrants remand:

> Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. *See Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir.1983); *Cotter,* 642 F.2d at 707.  Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, *see Hartranft,* 181 F.3d at 362 (citing 20 C.F.R. § 404.1529), the ALJ must still explain why he is rejecting the testimony. *See Van Horn,* 717 F.2d at 873.  In *Van Horn,* this Court set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony. *See* 717 F.2d at 873.  In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective medical evidence.  However, the ALJ failed to mention the testimony of

20

Burnett's husband, George Burnett, and her neighbor, Earl
Sherman.  On appeal, the Commissioner contends the ALJ did
not need to mention their testimony because it "added nothing
more than stating [Burnett's] testimony was truthful."
Commissioner's Brief at 21.  This argument lacks merit
because the ALJ made a credibility determination regarding
Burnett, and these witnesses were there to bolster her
credibility. R. 17 ("claimant's allegations of disability made at
hearing are unsubstantiated").  In *Van Horn,* we stated we
expect the ALJ to address the testimony of such additional
witnesses.  On remand, the ALJ must address the testimony of
George Burnett and Earl Sherman.

*Burnett*, 220 F.3d at 122.  And judges of this Court have also held that an ALJ may

not ignore statements and testimony from third-party witnesses. *See e.g. Farner v.*

*Colvin*, No. 3:15-CV-1559, 2017 WL 663243, at *12 (M.D. Pa. Feb. 17, 2017)

("Based on the holding in Burnett and subsequent holdings rendered in the United

States District Court for the Middle District of Pennsylvania, the ALJ erred in

failing to acknowledge in his opinion the testimony of Plaintiff's wife because if

the ALJ had considered the statements made by Plaintiff's wife regarding

Plaintiff's limitations physically and with concentration, he may not have arrived

at the same determination."); *Haubert v. Colvin*, 3:13-CV-02349-GBC, 2015 WL

1471477, at *6 (M.D. Pa. Mar. 31, 2015) (concluding that because the ALJ did not

address statement of the claimant's daughter, "the Court is bound by *Burnett* to . . .

remand on this ground"); *Hess v. Colvin*, No. 3:12-CV-1907, 2014 WL 901144, at

*11 (M.D. Pa. Mar. 7, 2014) (concluding that the ALJ's failure to discuss or

explain her reasons for rejecting the claimant's employer's handwritten statement,

which tended to corroborate the claimant's testimony and bolster her credibility, was error and remanding the case to the Commissioner).

Although "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity," *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001), "the ALJ need not undertake an exhaustive discussion of all the evidence." *Richards*, 223 F. Supp. 3d at 304 (citing *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.")). "Admittedly, '[i]n some circumstances, a piece of evidence can be so lacking in probative value, or so overwhelmed by countervailing evidence, that it can be implicitly rejected without explanation.'" *Caraballo v. Colvin*, 1:14-CV-647, 2015 WL 6501223, at *7 (M.D. Pa. Oct. 27, 2015) (quoting *McConnell v. Astrue,* 3:09–44, 2010 WL 2925053, at *9 (W.D. Pa. July 20, 2010)). But here, the testimony of J.F.'s mother and grandmother had great probative value as these are individuals who had direct contact with J.F. on an ongoing basis, and they know him well.

Further, "[o]rdinarily, failure to address a third-party statement is reversible error." *Prall v. Colvin*, 3:12-CV-01681, 2014 WL 2579642, at *10 (M.D. Pa. June 9, 2014). But under certain circumstances such error may be harmless. *Id.; see also Morton*, 2020 WL 2847930, at *6 (concluding that the ALJ improperly rejected lay testimony on the basis that it was from a lay person, rather than a

medically trained person, but that such error was not material in that case because the ALJ also rejected the testimony as inconsistent with the record as a whole).  In addition to the Commissioner not raising a harmless-error argument, we note that the mother and grandmother's testimony was important testimony in this case.  It was important as to all the relevant domains of functioning.  And as Judge Carlson noted in his earlier report recommending remand, it was especially important with respect to J.F.'s limitations on interacting with others: "[A] fair reading of the testimony of J.F.'s mother and grandmother simply does not sustain the conclusion that J.F. experienced less than marked impairments in interacting with others.  Quite the contrary, these witnesses described J.F. as socially isolated, estranged from his peer group, fearful, anxious, and self-abusive." *Faux*, 2018 WL 2250917, at *7.  And even after remand, J.F.'s mother painted a far bleaker picture of J.F.'s limitations than those accepted by the ALJ. *Admin. Tr.* at 614–624.  The ALJ's decision may well have been different had she accepted that testimony.  The ALJ was required at a minimum to explain the weight, if any, she gave to such testimony.  Because the ALJ failed to do so, we cannot conclude that her decision is supported by substantial evidence.

### C.  The Opinions of Dr. Grutkowski.

Faux also asserts that the ALJ improperly relied on the opinions of Dr. Grutkowski, a state agency psychology consultant.  On January 22, 2014, with little analysis or explanation, Dr. Grutkowski opined that J.F. had less than marked limitations in the domains of acquiring and using information, of attending and completing tasks, of interacting and relating with others, and of caring for oneself and no limitations in the domains of moving about and manipulating objects and of health and physical wellbeing. *Admin. Tr.* 76.

In her first decision, finding Dr. Grutkowski's conclusions consistent with the other evidence in the record, the ALJ gave great weight to Dr. Grutkowski's opinion regarding all domains expect the domain of caring for oneself. *Id.* at 634.  As to the domain of caring for oneself, the ALJ gave little weight to Dr. Grutkowski's opinion because, according to the ALJ, "the documentary record shows no issues with this domain." *Id.*

In her decision after remand, as to the domain of acquiring and using information, the ALJ gave "great weight to the State Agency psychological consultant [Dr. Grutkowski] who found that this domain reflected less than marked limitations, as it remains well supported and consistent with the longitudinal evidence of record." *Id.* at 592 (citation to the record omitted).  The ALJ made substantially the same statement as to the domain of attending and completing

24

tasks, *see id.* at 593, as to the domain of interacting and relating with others, *see id.* at 594, and as to the domain of care for oneself, *see id.* at 597 (even though the ALJ had stated in her previous decision that she gave little weight to Dr. Grutkowski's opinion as to this domain, *see id.* at 634).

Faux suggests that the ALJ improperly relied on Dr. Grutkowski's opinions because Dr. Grutkowski "did not have the full benefit of the entire record" at the time he formed his opinions. *Doc. 15* at 9.  The Commissioner does not respond to Faux's contention that the ALJ improperly relied upon Dr. Grutkowski's opinions or that Dr. Grutkowski's opinions were formed upon less than the entire record. *See Doc. 18.*  In fact, the Commissioner does not mention the ALJ's reliance on Dr. Grutkowski at all in her brief. *Id.*

We are mindful that opinions of state agency consultants "merit significant consideration." *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011).  And "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.*  Further, the mere fact that some additional medical evidence is received after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id.*  But here, the time lapse between when Dr. Grutkowski gave his opinions, i.e., January 22, 2014, and when the ALJ issued her second decision, i.e., July 3, 2019, was nearly five and a half

years.  Five and a half years in the life and development of a child is substantial.

Further, in addition to additional records and evidence being admitted after Dr.

Grutkowski gave his opinions, much had changed with respect to J.F. in the

intervening time, so much so that in her decision after remand, the ALJ found that

J.F. suffered from different serious impairments than those she found he suffered

from in her decision before remand.  Given the substantial time lapse and

substantial change in J.F.'s impairments, the ALJ's boilerplate statement that Dr.

Grutkowski's opinion "remains well supported and consistent with the longitudinal

evidence of record," *see Admin. Tr.* at 592, without any discussion of how Dr.

Grutkowski's opinion was supported by or consistent with the longitudinal record,

is not substantial evidence.

### D.  We will vacate the Commissioner's decision and remand the case for further proceedings.

In sum, the ALJ's failure to follow the remand order, the ALJ's failure to

specifically weigh the lay testimony of J.F.'s mother and grandmother in her

decision after remand, and the ALJ's failure to explain how Dr. Grutkowski's

opinions remained supported by or consistent with the longitudinal record warrants

vacating the Commissioner's final decision.[4]

---

[4] Because we conclude that the Commissioner's decision must be vacated, we will not address Faux's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown*

The question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits as Faux requests in her complaint. *See doc. 1* at 7 (Wherefore Clause) (requesting that the court reverse the Commissioner's decision or grant such further relief as is justified).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales*, 225 F.3d at 320 (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether

---

*v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id*.

there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

We are concerned with the delay in this case, which arguably can be considered excessive. *See Diaz*, 388 F. Supp. 3d at 391 (observing that "courts have found that administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand").  Nevertheless, although the record is lengthy, it is not clear that it has been fully developed in all relevant respects, particularly given the changing nature of J.F.'s impairments over time.  And given this, it would be premature to say whether J.F. should be considered disabled.  Thus, we will remand the case to the Commissioner for further proceedings.

"We suggest—but do not order—that the Commissioner reassign this case to a different ALJ on remand." *Sparaney v. Kijakazi*, No. 3:20-CV-02054, 2022 WL

28

969619, at *10 (M.D. Pa. Mar. 30, 2022) (citing *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010) ("Courts can suggest but cannot require a change of administrative law judges . . . unless the administrative law judge has demonstrated a degree of bias . . . that would disqualify him as a matter of due process from further participation in the litigation . . . ."). "Based on our review of the two written decisions by the ALJ and transcripts of the two administrative hearings conducted before her, it is our impression that the goal of a fair and effective resolution of the plaintiff's application for . . . benefits may be best served by such reassignment." *Id.*

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge